UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PACNAV S.A.,                                     :     06 CV 13512 (JGK)
                                                 :
                    Plaintiff,                   :     ECF CASE
                                                 :
         - against -                             :
                                                 :
EFFIE BUSINESS CORP. & ANTUN                     :
HERMANOS,                                        :
                                                 :
                    Defendant.                   :
-----------------------------------------------------------X

## AFFIDAVIT OF KEVIN J. LENNON IN OPPOSITION
## TO ORDER TO SHOW CAUSE ISSUED ON DECEMBER 7, 2009

State of Connecticut   )
                       )    ss:    Town of Southport
County of Fairfield    )

KEVIN J. LENNON, having been duly sworn, deposes and states the following under oath:

1. I am a member in good standing of the Bar of this Court and an attorney in the law firm of Lennon, Murphy & Lennon, LLC, which represents the interests of the Plaintiff, PACNAV S.A. (hereinafter referred to as "Plaintiff").

2. I submit this Affidavit pursuant to the Order to Show Cause issued on December 7, 2009 ordering Plaintiff to show cause why property of the Defendant EFFIE BUSINESS CORP. & ANTUN HERMANOS (hereinafter referred to as "EBC") that can be attached pursuant to Rule B may be found in the Southern District of New York or any other reason why the attachment issued against EBC should not be vacated and this action dismissed without prejudice.

3. The Order to Show Cause was issued based on the recent decisions issued by the Second Circuit Court of Appeals in *Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte Ltd.*, 08-3477-cv, 2009 WL 3319675 (2d Cir. Oct. 16, 2009) (hereinafter referred to as "*Jaldhi*") and *Hawknet, Ltd. v. Overseas Shipping Agencies*, 09-2128-cv, 2009 WL 3790654 (2d Cir. Nov. 13, 2009) (hereinafter referred to as "*Hawknet*").

4. Plaintiff commenced this action on November 28, 2006 by the filing of a Verified Petition to Compel Arbitration which included a prayer for an Ex Parte Order for Process of Maritime Attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. §§ 1 and 8. *See copy of Verified Petition attached hereto as Exhibit 1.*

5. On the same date the Court issued an Ex Parte Order of Maritime Attachment and Garnishment pursuant the Plaintiff's Verified Petition. The Ex Parte Order authorized the Plaintiff to attach Defendant EBC's property up to the sum of $80,202.53, located within this judicial district and belonging to the Defendant EBC. Process of Maritime Attachment and Garnishment (PMAG) was issued based upon the Ex Parte Order issued by the Court.

6. In response to the Ex Parte Order and PMAG, garnishees Bank of America and Wachovia have restrained Defendant's funds in New York in the amount of $80,202.53. Plaintiff furnished notice of the restraint of Defendant's funds pursuant to Local Admiralty Rule B.2.

7. Due to Defendant EBC's failure to nominate an arbitrator despite service of the Verified Petition, the Plaintiff was required to obtain and serve an Order to Show Cause compelling Defendant EBC to proceed with arbitration. The Order to Show Cause called for a

2

hearing on February 8, 2007. *See copy of Order to Show Cause dated December 15, 2006 attached hereto as Exhibit 2.*

8. In response to service of the Order to Show Cause, EBC sent a letter to Plaintiff's counsel indicating its apparent consent to proceed with arbitration and purporting to nominate an arbitrator. *See copy of EBC letter dated January 10, 2007 attached hereto as Exhibit 3.*

9. Plaintiff responded to EBC's letter with a fax letter discussing the arbitration issues and seeking EBC's agreement to voluntarily post the balance of outstanding security. *See copy of Plaintiff's letter dated February 7, 2007 attached hereto as Exhibit 4.*

10. The Court kept the hearing scheduled for February 8, 2007 on the docket and received Defendant EBC's representative – Captain Cesar de Windt – at the hearing but re-scheduled the hearing for March 2, 2007 with the instruction that EBC should retain counsel and submit any papers in response to the pending Order to Show Cause.

11. On February 19, 2007 Defendant EBC sent a letter to the Court seeking a further three week adjournment of the conference. The Court denied EBC's request. *See copy of Defendant's letter dated February 19, 2007 endorsed by the Court attached hereto as Exhibit 5.*

12. Defendant EBC, via its counsel, submitted a letter to the Court on March 2, 2007 informing the Court, *inter alia*, that it consented to proceed to arbitration. *See copy of Defendant's letter dated March 2, 2007 attached hereto as Exhibit 6.*

13. On March 2, 2007 the Defendant also filed a general appearance. *See copy of EBC's general appearance dated March 2, 2007 attached hereto as Exhibit 7.*

14. On March 2, 2007 the Court conducted a hearing on Plaintiff's Order to Show Cause at which time the Defendant, through its counsel, formally agreed to proceed to arbitration in New York and advised that it would proceed to appoint an arbitrator on its behalf.

3

15. Through the submission of its letters, appearances in New York and filing of a general appearance the Defendant EBC consented to this Court's exercise of personal jurisdiction in this matter. Defendant has never contended in an Answer or any application that this Court lacks personal jurisdiction over it.

16. At no time prior to the *Jaldhi* decision did Defendant EBC ever contend that these funds did not belong to it, oppose or otherwise challenge Plaintiff's maritime attachment or request that its funds be released.

17. On March 8, 2007 the Defendant submitted a further letter to the Court in which it requested the case be placed on inactive status, ***retaining jurisdiction, pending the outcome of arbitration*** and award no costs or fees. *See copy of EBC's letter dated March 8, 2007 attached hereto as Exhibit 8 (emphasis added).*

18. On March 14, 2007 the Court issued a dismissal without prejudice but did not vacate the Ex Parte Order and the Defendant's restrained funds continued to be restrained pursuant to the Ex Parte Order and PMAG. *See copy of Order dated March 14, 2007 attached hereto as Exhibit 9.*

19. Therefore, the procedural posture of this matter as of March 14, 2007 was that the parties had agreed to proceed to arbitration with the knowledge that the Defendant's restrained funds would remain under attachment, subject to the Court's jurisdiction and pending the outcome of New York arbitration.

20. Defendant requested that this action be placed on inactive status, with the court to retain jurisdiction pending the outcome of arbitration, and thereby acknowledged that its funds would be held as security for Plaintiff's claims. In at least two other cases district courts have upheld attachments post *Jaldhi*. *See copies of decisions in Americas Bulk Transport Ltd. v. Lion*

4

*Shipholdings, 07 Civ. 3818 (LAK) and Europa Maritime v. Manganese Trans Atlantic Corp., 08 Civ. 9523 (DAB) attached hereto as Exhibits 10 and 11.*

21. Following the dismissal issued on March 14, 2007 the parties engaged in a protracted effort to amicably settle the underlying claim without need for proceeding to formally arbitrate their disputes. In Plaintiff's view, since Defendant had acknowledged Plaintiff's claims and promised payment of $54,000 as long ago as April 2006, the case should have been very promptly settled. *See exchange of messages between EBC and Plaintiff's London solicitors attached hereto as Exhibit 12.*

22. Despite the efforts to settle this matter the Defendant failed to ever make a settlement offer and therefore Plaintiff was constrained to proceed to resolve the matter by submitting its claims to arbitration. Plaintiff submitted its initial arbitration brief on June 2, 2009; Defendant EBC submitted its initial responsive brief on July 31, 2009; Plaintiff submitted a second arbitration brief on October 23, 2009; Defendant EBC submitted its second responsive brief on December 7, 2009. Plaintiff intends to submit a final limited brief and foresees that the arbitration will be fully briefed and submitted to the arbitration panel by the end of January 2010.

23. Notwithstanding this Court's previous holdings in which it has declined to carve out an exception to *Jaldhi* and *Hawknet* it is respectfully submitted that the facts here do not come within *Jaldhi* as the Defendant (a) submitted to this Court's personal jurisdiction; (b) agreed to leave its funds under restraint and proceed to arbitration in New York and (c) specifically requested that this Court retain jurisdiction over this matter pending the outcome of arbitration.

24. The Second Circuit has previously held that in some exceptional cases, courts may shape relief in light of disruption of important reliance interest or the unfairness caused by

5

unexpected judicial decisions. *See Margo v. Weiss*, 213 F.3d 55, n2 (2d Cir. 2000) citing *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 125 L.Ed. 2d 74, 113 S. Ct. 2510 (1993). Plaintiff submits that this is such an exceptional case. Plaintiff validly obtained security pursuant to Supplemental Admiralty Rule B and proceeded to arbitration in New York on the basis of the security that had been obtained and Defendant's concession to permit that security to remain pending the outcome of arbitration.

25. Certainly, if Plaintiff had any indication that *Winter Storm* would be overruled, it would have proceeded to formal arbitration and not awaited Defendant's settlement offer which simply never materialized. Further, Plaintiff did not require substitute, or alternative security, from Defendant EBC despite a protracted period of time when it could have done so because it rightfully believed it had obtained valid security in New York.

26. If the attached funds are now released, Plaintiff will be left entirely unsecured for its claim and will be unable to enforce a forthcoming arbitral award in its favor.

27. It is respectfully submitted that this would frustrate the purpose of arbitration as acknowledged in the American Arbitration Act which seeks to promote the orderly and efficient resolution of parties' disputes.

28. The advancement of the goals of the Convention on Recognition and Enforcement of Foreign Arbitral Awards was recently credited as a sufficient basis to continue a post-*Jaldhi* restraint by Judge Marrerro. *See Order dated November 23, 2009 in Samsun Logix Corp. v. Dalian Dong Zhan Group Co. Ltd., 08 Civ. 9458 (VM) attached hereto as Exhibit 13.*

29. Given that Plaintiff has spent a great deal of money, time and energy in prosecuting its claims in New York, and it had every reasonable expectation that the funds attached in this matter would serve as good security (and it has relied on the security in New

York when making the decision not to utilize other means of obtaining security which are now foreclosed), the *Jaldhi* decision, notwithstanding *Hawknet*, should not be applied retroactively to vacate this maritime attachment.

30. Finally, in the event that this Court, upon review of the Plaintiff's affidavit and any further papers submitted herein, determines that the Plaintiff's maritime attachment should be vacated then it is respectfully requested that the Court grant Plaintiff a temporary stay to (a) appeal such decision to the Second Circuit Court of Appeals and/or (b) obtain an Order from the arbitration tribunal compelling Defendant to provide Plaintiff with security for its claims.

31. It is abundantly clear that the New York arbitration tribunal possesses the power to require security and it is submitted that in the particular circumstances here that such an Order would be entirely appropriate and readily issued by the panel. *See In the Matter of the Arbitration between Agrowest, S.A. and Maersk Sealand, SMA No. 4003 (May 26, 2009) (discussing at length the authority of New York arbitration tribunal to decide issues of security and costs)* attached hereto as Exhibit 14.

32. Notwithstanding such legal authority, if the attached funds are released to the Defendant prior to an Order being obtained from the arbitration tribunal then it is entirely likely that such security would not be provided given Defendant's efforts to obtain the release of the security obtained herein (to which it never previously objected) and its failure to abide by its prior commitment to settle this matter by paying the undisputed amount owed to Plaintiff well over three (3) years ago.

Dated: Southport, CT
       December 14, 2009

                                                      _____
                                                       Kevin J. Lennon

Sworn to and subscribed before me this
14th day of December, 2009

*(signature)*
Notary Public

```
Sharmaine M Passaro
Notary Public-Connecticut
My Commission Expires
March 31, 2014
```

## AFFIRMATION OF SERVICE

I hereby certify that on December 14, 2009, a copy of the foregoing Affidavit of Kevin J. Lennon in Opposition to Order to Show Cause dated December 7, 2009 was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

By: _____
Kevin J. Lennon